THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN THE MATTER OF: )
)
Criminal Complaint for Kirk Gross ) CASE NO. 19-1228-ADC
a/k/a White Boy )
)

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Ivo M. Louvado, a Task Force Officer with Homeland Security Investigations, being duly sworn, depose and state that:

1. Your Affiant makes this Affidavit in support of a criminal complaint and arrest warrant for Kirk Gross a/k/a White Boy ("**GROSS**").

2. Your Affiant submits that probable cause exists to believe that **GROSS** is engaging in drug trafficking activities in violation of 21 U.S.C. § 841(a)(1) and is prohibited person possessing a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

### Affiant's Background

3. Your Affiant is an investigative or law enforcement officer of the United States within the meaning of 18 U.S.C. § 2510(7)—that is, an officer of the United States who is empowered by law to conduct investigations of, and make arrests for, offenses enumerated in 18 U.S.C. § 2516.

4. Since January 2018, your Affiant has been a Task Force Officer with the Immigration and Customs Enforcement's Homeland Security Investigations ("HSI"), assigned to the Anti-Crime Section in Baltimore, Maryland. Your Affiant also works at the Baltimore City Police Department for twenty years, rising to the level of Detective over fifteen years ago.

5. As a HSI Task Force Officer, your Affiant has participated in numerous investigations, several of which were Organized Crime Drug Enforcement Task Force

investigations. During these investigations, your Affiant has performed duties associated with electronic surveillance including, but not limited to, serving as the lead case agent, monitoring consensual telephone calls, conducting physical surveillance, examining records related to narcotics trafficking and money laundering, and preparing toll analyses. In addition, your Affiant has worked directly with confidential sources and informants to conduct controlled drug purchases; has debriefed them; and has interviewed drug dealers and users about their lifestyle, appearance, and habits. Moreover, your Affiant has applied for search warrants, arrest warrants, and Title III wire intercepts; executed search warrants; and seized evidence related to drug trafficking, including substantial quantities of narcotics, narcotics proceeds, and narcotics paraphernalia.

6. As a BPD Detective, your Affiant has investigated narcotics and firearms trafficking. During those investigations, your Affiant has authored and executed hundreds of search warrants and their execution led to the seizure of firearms, narcotics, drug paraphernalia, and documents relating to the distribution of narcotics as well as the arrest of those who violated state gun and drug laws.

7. Your Affiant received specialized training in drug identification, concealment, and distribution; drug recognition and interdiction; surveillance; interviews and interrogation; and cellular telephone forensics and analysis. Your Affiant earned a Bachelor of Science degree in Criminal Justice from John Jay College of Criminal Justice in New York City, New York.

8. Based on your Affiant's knowledge, training, and experience, he has become familiar with the following: (1) the manner in which drug traffickers (a) transport, store, and distribute drugs, (b) collect, store , and conceal the proceeds of their illegal activities; and (2) the ways in which narcotics traffickers use cellular telephones, cellular telephone technology, coded

communications or slang during conversations, and other means to facilitate their illegal activities and thwart law enforcement investigations.

9. Specifically, based on your Affiant's knowledge, training and experience, your Affiant learned that persons involved in illegal drug distribution commonly do the following:

   a. Maintain keys to safe deposit box, books, records, receipts, notes, ledgers, bank records, money orders, and other papers relating to the importation, manufacture, transportation, ordering, sale, and distribution of illegal controlled substances. Dealers in illegal controlled substances maintain the aforementioned enumerated items where they have ready access to them, such as in secured locations within their residence, the residences of their friends, family members, and associates, or their drug distribution locations. Due to the advancement in technology, drug traffickers may use computers and other electronic storage media, including cellular telephones and personal tablets, to store the records listed above.

   b. Take, or cause to be taken, photos of themselves, their associates, their property, and illegal contraband. Drug traffickers usually maintain these photos where they can readily access them, such as their cellular telephone and electronic devices, their residence, the residences of their friends, family members or associates.

   c. Use cellular telephones and other electronic devices to maintain their co-conspirators' names and contact information, facilitate drug transactions, and run their drug distribution operations.

**Basis of Information**

10. The facts set forth in this Affidavit does not contain every fact known to me regarding this investigation, but rather contains information necessary to demonstrate probable cause in support of the above-referenced search warrant. The facts and information contained in this affidavit are based on my personal knowledge and information obtained from federal and state law enforcement officers. All observations referenced in this affidavit that I did not personally make were relayed to me by the person(s) who made such observations or in reports that detailed the events described by that person(s).

## Probable Cause

11. In mid-July 2018, HSI Baltimore received information from Cooperating Defendant 1 ("CD-1")[1] that **GROSS**, a large-scale narcotics trafficker in Baltimore, supplies others with heroin, cocaine, and fentanyl and oversees the daily operation of narcotics shops in Baltimore.

12. Between August and September 2018, CD-1, on behalf of HSI, made four controlled purchases of heroin and/or fentanyl, totaling approximately one hundred thirty-four (134) grams.

13. During this investigation, law enforcement conducted surveillance of **GROSS** at different locations—including his residence located at 9202 Appleford Circle, Apt. 448, Owings Mills, Maryland 21117 ("**Target Location 1**") that he later admitted, during the search warrant execution on **Target Location 1**, to occasionally staying there with his girlfriend, Latoya Dow— and began identifying **GROSS'** co-conspirators. Among **GROSS'** co-conspirators was Andre Fields ("**FIELDS**"), who operates a 2006 white Chevrolet Silverado bearing Maryland license tag number 1DM6388 and registered to **FIELDS** at 20635 Woodbridge Drive, Hagerstown, Maryland 21742 ("**FIELDS' Vehicle 1**") and a silver Lexus bearing Maryland license tag number A168202 and registered to **FIELDS** and Shenia Graham at 20635 Woodbridge Drive, Hagerstown, Maryland 21742 ("**FIELDS' Vehicle 2**").

---

[1] CD-1 has pending narcotics distribution charges outside of Maryland is cooperating with law enforcement to obtain leniency on those charges. To date, CD-1 has not provided false or misleading information to your Affiant. Additionally, CD-1 has provided information to your Affiant that law enforcement has corroborated, to the extent possible. Based upon the information that CD-1 provided to your Affiant as well as other law enforcement's interactions and supervisions of CD-1, your Affiant finds CD-1 to be credible and reliable.

14. For instance, on February 23, 2019, HSI investigators observed **FIELDS** enter the front of **Target Location 1** at approximately 4:30 p.m. and exited **Target Location 1** clutching a dark bag close to his body and ran to **FIELDS' Vehicle 2**. Based on your Affiant's training, knowledge, and experience, your Affiant believes that the dark bag contained narcotics that **GROSS** supplied to **FIELDS**.

15. On March 4, 2019, Honorable Christopher L. Panos of Baltimore City Circuit Court issued a tracking warrant authorizing the use of a Global Positioning System ("GPS") device on **FIELDS' Vehicle 1**.

16. On March 19, 2019, investigators conducted surveillance of **FIELDS' Vehicle 1** based on the court-authorized GPS data. At approximately 3:40 p.m., an HSI investigator observed **FIELDS' Vehicle 1** traveling south of Robinwood Drive in Hagerstown, Maryland at which time that investigator positively identified **FIELDS** as the driver of **FIELDS' Vehicle 1**.

17. On the same day, at approximately 3:53 p.m., a Maryland State Police observed **FIELDS' Vehicle 1** with illegal tint and an obstructed registration plate being operated on the highway and conducted a traffic stop on **FIELDS' Vehicle 1**. **FIELDS**, who presented his Maryland driver's license, was the driver of **FIELDS' Vehicle 1**.

18. During the stop, a trained and certified narcotics detection dog, K-9 Preacher,[2] rendered a positive alert on the driver side of **FIELDS' Vehicle 1**.

---

[2] "Preacher" was last certified in November 2018 to alert on odors of ecstasy, cocaine, heroin, methamphetamine, and marijuana and is trained monthly to ensure his accuracy. Maryland State Police Trooper David Thompson is Preacher's handler.

5

19. Law enforcement searched **FIELDS' Vehicle 1** and recovered a clear plastic zip lock bag containing approximately one hundred (100) grams of a tan rock substance, suspected heroin, from the center console. As a result, law enforcement arrested **FIELDS**.

20. On March 20, 2019, a laboratory confirmed that the recovered tan rock substance was 98.326 grams of a substance containing heroin and fentanyl.

21. Based on state court-authorized GPS tracking of **GROSS'** cellular telephone assigned telephone number (410) 622-1935 ("**GROSS' cell phone**") in conjunction with physical surveillance, law enforcement learned that **GROSS** frequented his second residence located at 9 Anandale Court, Pikesville, Maryland 21208 ("**Target Location 2**")—which **GROSS** shared with his wife, Felicia Garrett Gross. HSI investigators often observed **GROSS** enter and exit **Target Location 2**, as recent as April 5, 2019.

22. **Target Location 2** is listed as **GROSS'** address on his Maryland Vehicle Administration driver's license.

23. As recent as April 4, 2019, the GPS tracking data from **GROSS' cell phone** reflected that **GROSS** was in the area of **Target Location 1**, and HSI investigators observed parked at **Target Location 1** the 2018 silver Toyota Camry bearing Maryland license tag number 5DP1764 and registered to All Car Leasing located at 6500 Baltimore National Pike, Catonsville, Maryland 21228 ("**GROSS' Rental Vehicle**") that law enforcement observed **GROSS** driving it several times, as recent as April 4, 2019. Additionally, HSI investigators often observed **GROSS** enter and exit **Target Location 1**, as recent as April 5, 2019.

24. On April 5, 2019 at approximately 9:12 a.m., HSI investigators observed **GROSS** exit **Target Location 2**, remove a black duffel bag from the trunk of **GROSS' Rental Vehicle**, and carry that bag into **Target Location 2**.

25. On the same day shortly after such observations, Honorable Kathleen Gallogly Cox of the Baltimore County Circuit Court issued search and seizure warrants for **Target Location 1** and **Target Location 2**, and investigators executed those warrants.

26. From **Target Location 1**, investigators recovered, inter alia, a cardboard box containing a black plastic bag containing a clear plastic bag containing a tan powder substance (suspected heroin/fentanyl), four ziplock baggies containing a white substance (suspected cocaine) from the rear bedroom closet; a black cloth bag containing a large ziplock bag containing a tan powder substance that field tested positive for heroin and fentanyl from rear bedroom closet top shelf inside of a shoe box; a black bag containing two firearms with magazines from the hallway closet; and digital scales, a sifter, heat bag sealer, and a cellular telephone from the kitchen; and an I-pad from the living room floor.

27. From **Target Location 2**, investigators recovered, inter alia, an undetermined amount of bulk United States currency in various denominations and various drug ledgers from the closet and clothing hamper in the master bedroom; and two handguns with loose ammunition and loaded magazines from inside of a shoe box in the master bedroom closet.

28. **GROSS**, having been previously convicted of at least one crime punishable by more than one year, is prohibited from possessing a firearm or ammunition.

29. The seized firearms traveled through interstate commerce prior to law enforcement's execution of the search warrants.

## Conclusion

30. Based on the foregoing, your Affiant submits there is probable cause to believe that **GROSS** is engaging in drug trafficking activities in violation of 21 U.S.C. § 841(a)(1) and is a prohibited person possessing a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1).

31. Accordingly, your Affiant respectfully requests the issuance of the requested criminal complaint and arrest warrant.

Ivo M. Louvado
Task Force Officer
Homeland Security Investigations

Subscribed and sworn before me this 8th day of April, 2019.

Honorable A. David Copperthite
United States Magistrate Judge